## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALL EUROPEAN AUTO SUPPLY, INC.,
individually and on behalf of a class of all others
similarly situated,

                    Plaintiff,

v.

AISAN INDUSTRY CO., LTD., FRANKLIN
PRECISION INDUSTRY, INC., AISAN
CORPORATION OF AMERICA, HYUNDAM
INDUSTRIAL CO., LTD., DENSO
CORPORATION, DENSO INTERNATIONAL
AMERICA, INC., DENSO INTERNATIONAL
KOREA CORPORATION, HITACHI, LTD.,
HITACHI AUTOMOTIVE SYSTEMS, LTD.,
HITACHI AUTOMOTIVE SYSTEMS
AMERICAS, INC., KEIHIN CORPORATION,
KEIHAN NORTH AMERICA, INC., MARUYASU
INDUSTRIES CO., LTD., MIKUNI
CORPORATION, MIKUNI AMERICAN
CORPORATION, MITSUBISHI ELECTRIC
CORPORATION, MITSUBISHI ELECTRIC US
HOLDINGS, INC., MITSUBISHI ELECTRIC
AUTOMOTIVE AMERICA, INC., MITSUBA
CORPORATION, AMERICAN MITSUBA
CORPORATION, ROBERT BOSCH GMBH,
BOSCH ELECTRICAL DRIVES CO., LTD., and
ROBERT BOSCH LLC,

                    Defendants.

Case No. _____

## CLASS ACTION COMPLAINT

Plaintiff All European Auto Supply, Inc. ("Plaintiff"), individually and on behalf of the

proposed class of direct purchasers of Fuel Injection Systems (as defined below), brings this

action against Defendants Aisan Industry Co., Ltd., Franklin Precision Industry, Inc., Aisan

Corporation of America, Hyundam Industrial Co., Ltd., DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, Hitachi, Ltd., Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., Keihin Corporation, Keihan North America, Inc., Maruyasu Industries Co., Ltd., Mikuni Corporation, Mikuni American Corporation, Mitsuba Corporation, American Mitsuba Corporation, Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., Mitsubishi Electric Automotive America, Inc., Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd., Robert Bosch LLC (collectively, "Defendants"), and other unnamed co-conspirators, for damages under the antitrust laws of the United States and demands a jury trial, and, upon personal information as to the facts pertaining to itself and upon information and belief as to all other matters, hereby alleges as follows:

## INTRODUCTION

1.    The United States Department of Justice (the "DOJ"), in conjunction with various domestic and foreign governmental agencies, is currently conducting an investigation into the automotive parts industry that one DOJ official described as "**appear[ing] to be the biggest criminal antitrust investigation that we've ever encountered**."  The DOJ's investigation encompasses a wide array of automotive parts and has already yielded billions of dollars in criminal fines, as well as dozens of prison sentences.

2.    Some of the parts being investigated include those comprising an automobile's "Fuel Injection System," a group of related parts that, as defined in more detail below, are used to admit fuel or a fuel/air mixture into engine cylinders.

3.    Defendants are competing manufacturers of Fuel Injection Systems sold throughout the United States, or installed in motor vehicles manufactured or sold throughout the

United States, that, together with their as-yet unknown co-conspirators, entered into an agreement, combination, or conspiracy to fix, raise, maintain, and/or stabilize prices, rig bids, and allocate the market and customers in the United States for Fuel Injection Systems. This agreement, combination, or conspiracy constituted an unreasonable restraint of interstate trade and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

4.    Defendants Aisan Industry Co., Ltd., Hitachi Automotive Systems, Ltd., Mitsuba Corporation, and Mitsubishi Electric Corporation have already pled guilty to participating in a conspiracy to rig bids for, and to fix stabilize, and maintain the prices of, Fuel Injection Systems and/or their constituent parts. Defendants DENSO Corporation and Robert Bosch GmbH have already pled guilty to participating in similar conspiracies involving various other automotive parts.

5.    As a direct and foreseeable result of the unlawful and anticompetitive conduct alleged herein, Plaintiff and others like it paid artificially inflated prices for Fuel Injection Systems during the period starting at least as early as January 1, 2000 and continuing to the present (the "Class Period").

6.    Plaintiff seeks to represent a class of direct purchasers consisting of all persons and entities who, during the Class Period, purchased Fuel Injection Systems in the United States from one or more of the Defendants or their co-conspirators.

**JURISDICTION AND VENUE**

7.    Plaintiff brings this action to obtain injunctive relief and to recover treble damages, costs of suit, and reasonable expenses and attorneys' fees, resulting from Defendants' violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3

8.     The Court has subject matter jurisdiction over this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

9.     The Court has personal jurisdiction over each of the Defendants as each of them, either directly or through the ownership or control of their United States subsidiaries, (a) resides in this District, (b) transacted business throughout the United States, including in this District, (c) sold or marketed substantial quantities of Fuel Injection Systems throughout the United States, including in this District, (d) committed overt acts in furtherance of the conspiracy alleged herein in the United States, including in this District, (e) was engaged in a conspiracy that was directed at, and had a direct, substantial, and reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities throughout the United States, including in this District, or (f) had substantial aggregate contacts with the United States as a whole, including in this District.

10.     Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, one or more of the Defendants reside in this District, and a substantial portion of the affected interstate trade and commerce has been carried out in this District.

## PARTIES

### Plaintiff

11.     Plaintiff All European Auto Supply, Inc. ("AEAS") is a Michigan corporation with its principal place of business in Royal Oak, Michigan.  AEAS purchased Fuel Injection Systems directly from one or more of the Defendants and/or their co-conspirators during the Class Period and suffered injury as a result of Defendants' unlawful conduct.

4

## Defendants

**The Aisan Defendants**

12.     Defendant Aisan Industry Co., Ltd. is a Japanese corporation with its principal place of business in Obu, Japan.  Aisan Industry Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

13.     Defendant Franklin Precision Industry, Inc. is a Kentucky corporation with its principal place of business in Franklin, Kentucky.  Franklin Precision Industry, Inc., a wholly owned subsidiary of Defendant Aisan Industry Co., Ltd., manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

14.     Defendant Aisan Corporation of America is an Illinois corporation with its principal place of business in Franklin, Tennessee.  Aisan Corporation of America, a wholly owned subsidiary of Defendant Aisan Industry Co., Ltd., manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

15.     Defendant Hyundam Industrial Co., Ltd. is a Korean corporation with its principal place of business in Asan-si, South Korea.  Hyundam Industrial Co., Ltd., a wholly owned subsidiary of Defendant Aisan Industry Co., Ltd., manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District,

during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

16.     Defendants Aisan Industry Co., Ltd., Franklin Precision Industry, Inc., Aisan Corporation of America, and Hyundam Industrial Co., Ltd. are collectively referred to herein as "Aisan" or the "Aisan Defendants."

**The DENSO Defendants**

17.     Defendant DENSO Corporation is a Japanese corporation with its principal place of business in Kariya, Japan.  DENSO Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

18.     Defendant DENSO International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.  DENSO International America, Inc., a wholly owned subsidiary of Defendant DENSO Corporation, manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

19.     Defendant DENSO International Korea Corporation is a Korean corporation with its principal place of business in Uiwang-si, South Korea.  DENSO International Korea Corporation, a wholly owned subsidiary of Defendant DENSO Corporation, manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

6

20.     Defendants DENSO Corporation, Denso International America, Inc., and DENSO International Korea Corporation are collectively referred to herein as "DENSO" or the "DENSO Defendants."

**The Hitachi Defendants**

21.     Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi Ltd. – directly and/or through its subsidiaries, which it wholly owned and controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

22.     Defendant Hitachi Automotive Systems, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi Automotive Systems, Ltd., a wholly owned subsidiary of Defendant Hitachi, Ltd., is the parent company of Defendant Hitachi Automotive Systems Americas, Inc.   Hitachi Automotive Systems, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

23.     Defendant Hitachi Automotive Systems Americas, Inc. is a Delaware corporation with its principal place of business in Harrodsburg, Kentucky.  Hitachi Automotive Systems Americas, Inc., a wholly owned subsidiary of Defendant Hitachi Automotive Systems, Ltd., manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

7

24.     Defendants Hitachi, Ltd., Hitachi Automotive Systems, Ltd. and Hitachi Automotive Systems Americas, Inc. are collectively referred to herein as "Hitachi" or the "Hitachi Defendants."

**The Keihin Defendants**

25.     Defendant Keihin Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  Keihin Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

26.     Defendant Keihin North America, Inc. is an Indiana corporation with its principal place of business in Anderson, Indiana.  Keihin North America, Inc., a wholly owned subsidiary of Defendant Keihin Corporation, is the parent company of Keihin Carolina System Technology, LLC, Keihin Aircon North America, Inc., Keihin IPT Manufacturing, LLC, Keihin Michigan Manufacturing, LLC, and Keihin Thermal Technology of America, Inc.  Keihin North America, Inc. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, the activities of Keihin North America, Inc. and its subsidiaries in the United States were under the control and direction of Keihin Corporation.

27.     Defendants Keihin Corporation and Keihin North America, Inc. are collectively referred to herein as "Keihin" or the "Keihin Defendants."

8

**Maruyasu**

28.    Maruyasu Industries Co., Ltd. ("Maruyasu") is a Japanese corporation with its principal place of business in Nagoya-shi, Japan.   Maruyasu – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

**The Mikuni Defendants**

29.    Defendant Mikuni Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.   Mikuni Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

30.    Defendant Mikuni American Corporation is a California corporation with its principal place of business in Northridge, California.   Mikuni American Corporation, a wholly owned subsidiary of Defendant Mikuni Corporation, is the parent company of Mikuni Mexicana S.A. DE CV in Reynosa, Mexico. Mikuni American Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.   At all times during the Class Period, the activities of Mikuni American Corporation and its subsidiaries were under the control and direction of Mikuni Corporation.

31.    Defendants Mikuni Corporation and Mikuni American Corporation are collectively referred to herein as "Mikuni" or the "Mikuni Defendants."

**The Mitsubishi Defendants**

32.     Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  Mitsubishi Electric Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

33.     Defendant Mitsubishi Electric US Holdings, Inc. is a Delaware corporation with its principal place of business in Cypress, California.  Mitsubishi Electric US Holdings, Inc., a wholly owned subsidiary of Defendant Mitsubishi Electric Corporation, is the parent company of Mitsubishi Electric Automotive America, Inc.  Mitsubishi Electric US Holdings, Inc. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, the activities of Mitsubishi Electric US Holdings, Inc. and its subsidiaries were under the control and direction of Mitsubishi Electric Corporation.

34.     Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio.  Mitsubishi Electric Automotive America, Inc., a wholly owned subsidiary of Defendant Mitsubishi Electric US Holdings, Inc., manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company, Mitsubishi Electric US Holdings, Inc., and/or the direction of its parent's parent company, Mitsubishi Electric Corporation.

10

35.     Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. are collectively referred to herein as "Mitsubishi" or the "Mitsubishi Defendants."

**The Mitsuba Defendants**

36.     Defendant Mitsuba Corporation is a Japanese corporation with its principal place of business in Gunma, Japan. Mitsuba Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

37.     Defendant American Mitsuba Corporation is an Illinois corporation with its principal place of business in Novi, Michigan. American Mitsuba Corporation, a wholly owned subsidiary of Defendant Mitsuba Corporation, manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

38.     Defendants Mitsuba Corporation and American Mitsuba Corporation are collectively referred to herein as "Mitsuba" or the "Mitsuba Defendants."

**The Bosch Defendants**

39.     Defendant Robert Bosch GmbH is a German company with its principal place of business in Stuttgart, Germany. Robert Bosch GmbH – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.

11

40.     Bosch Electrical Drives Co., Ltd. is a Korean company with its principal place of business in Sejong, South Korea.  It is a wholly owned subsidiary of Defendant Robert Bosch GmbH.  Bosch Electrical Drives Co., Ltd, directly and/or through its affiliates, manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, the activities of Bosch Electrical Drives Co., Ltd and its affiliates were under the control and direction of Robert Bosch GmbH.

41.     Defendant Robert Bosch LLC is a Delaware company with its principal place of business in Farmington Hills, Michigan.  Robert Bosch LLC, a wholly owned subsidiary of Defendant Robert Bosch GmbH and affiliate of Defendant Bosch Electrical Drives Co., Ltd., operates factories and distribution facilities in several states, including at least Illinois, Michigan, Massachusetts, Tennessee, and South Carolina.  Robert Bosch LLC, directly and/or through its affiliates, manufactured, marketed, and/or sold Fuel Injection Systems that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, the activities of Robert Bosch LLC and its affiliates were under the control and direction of its parent Robert Bosch GmbH and/or its affiliate Bosch Electrical Drives Co., Ltd.

42.     Defendants Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd., and Robert Bosch LLC are collectively referred to herein as "Bosch" or the "Bosch Defendants."

## AGENTS AND CO-CONSPIRATORS

43.     Various persons or firms not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in

12

furtherance thereof.  The Defendants are jointly and severally liable for the acts of their co-conspirators whether named or not named as Defendants in this Complaint.

44.    The acts alleged herein that have been performed by Defendants were authorized, ordered, and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control, or transaction of the Defendants' business affairs.

45.    Each Defendant acted as the agent, principal, or joint venturer of the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

46.    The acts alleged herein that have been performed by Franklin Precision Industry, Inc., Aisan Corporation of America, Hyundai Industrial Co., Ltd., DENSO International America, Inc., DENSO International Korea Corporation, Hitachi Automotive Systems Americas, Inc., Keihan North America, Inc., Mikuni American Corporation, American Mitsuba Corporation, Mitsubishi Electric US Holdings, Inc., Mitsubishi Electric Automotive America, Inc., Bosch Electrical Drives Co., Ltd., and Robert Bosch LLC were authorized, ordered, and condoned by their respective parent companies.

### FACTUAL ALLEGATIONS

**A.  Product Description: Fuel Injection Systems**

47.    A "Fuel Injection System" is a group of related parts used to admit fuel or a fuel/air mixture into engine cylinders.  These parts include injectors, high pressure pumps, pressure regulators, rail assemblies, feed lines, throttle bodies, as well as an array of meters (e.g., air flow meters and/or air mass meters), sensors (e.g., air mass sensors, altitude sensors, boost pressure sensors, cam position sensors, manifold absolute pressure sensors, mark sensors, phase sensors, pressure sensors, and/or speed sensor temperature sensors), and valves (e.g., check valves, cut-off valves, injection valves, and/or purge control valves).

48.     The various parts comprising an automobile's Fuel Injection System can be sourced together as a unitary system or sourced separately.  Moreover, Fuel Injection Systems can also be sold as part of a broader system, such as an engine management system.

49.     Defendants and their co-conspirators supplied Fuel Injection Systems which were: 1) manufactured in the United States and installed in motor vehicles manufactured in the United States or used for replacement parts for motor vehicles in the United States; 2) manufactured abroad, exported to the United States, and installed in motor vehicles manufactured and sold in the United States; and 3) manufactured abroad and exported into the United States for use as replacement parts for motor vehicles in the United States.

**B.  The Fuel Injections Systems Market**

50.     As of 2012, the Fuel Injection Systems market was estimated at $47 billion worldwide.

51.     The Fuel Injection Systems market has certain characteristics that are conducive to a price-fixing conspiracy and that make Defendants' conspiracy more plausible, namely there are high barriers to entry and demand for the product is inelastic.

52.     There are substantial barriers to entry in the Fuel Injection Systems market as any new entrant would face costly and lengthy start-up costs, including manufacturing plants and equipment, research and development, transportation, distribution infrastructure, the obtaining of skilled labor, and the existence of long-standing relationships between customers and suppliers. There are also significant regulatory hurdles requiring substantial investments in technology and engineering expertise in order to build Fuel Injection Systems that fully comply with environmental and public health/safety requirements.  Furthermore, Defendants own several patents related to the manufacture of Fuel Injection Systems that further inhibit market entry.

14

53.     Demand for Fuel Injection Systems is highly inelastic—*i.e.*, sellers of Fuel Injection Systems can increase prices with little or no decline in units sold.  This is because there are no viable substitutes for these products and a Fuel Injection System is an essential part of modern motor vehicles (even if prices are kept at a supra-competitive level).

**C.  The Request for Quotation Process**

54.     When procuring parts such as Fuel Injection Systems for manufacturing a new motor vehicle, an original equipment manufacturer ("OEM") issues a Request for Quotation ("RFQ").  Automotive parts manufacturers, such as the Defendants, then submit a bid or quotation to the OEM in response to the RFQ.

55.     The RFQ process is designed to obtain competitive, independent bids from multiple suppliers.  To that end, an OEM will issue the RFQ to multiple competing parts suppliers, those suppliers will submit bids, and the OEM will select a winner (usually the lowest bid).  Sometimes, before selecting the winner, an OEM or the suppliers may revise the technical specifications, and revised bids will be submitted.

56.     The parts purchased by the OEM in connection with that RFQ are purchased from the winning parts manufacturer for the lifespan of the motor vehicle model, which on average is between four to six years.  During that time frame, whenever an OEM purchases Fuel Injection Systems for that motor vehicle model, the OEM purchases the Fuel Injection Systems from the parts manufacturer who won the RFQ and was awarded the supply contract, at the price set by that supply contract.

57.     The prices set by the RFQ process are also used when direct purchasers other than the OEM who issued the RFQ purchase Fuel Injection Systems from the Defendants, such as those purchasing Fuel Injection Systems to replace parts as they become worn or damaged.

Every subsequent purchaser who buys Fuel Injection Systems from that Defendant pays at least the wining price set by the RFQ or higher.

58.     Thus, the RFQ process described above not only sets the prices for Fuel Injection Systems incorporated into new motor vehicles manufactured by that particular OEM, it also sets the price floor for all other direct purchasers, including those making purchases for use as replacement and aftermarket parts.

**D.  Defendants' Fuel Injection Systems Conspiracy**

59.     During the Class Period, Defendants and their co-conspirators engaged in a single conspiracy to raise, fix, maintain, and/or stabilize prices for Fuel Injection Systems by price-fixing, rigging bids for, and allocating the market and customers of Fuel Injection Systems sold in or into the United States.

60.     In furtherance of that conspiracy, Defendants participated in meetings, telephone conversations, emails, and other communications in order to discuss bids and price quotations for Fuel Injection Systems sold in or into the United States, and agreed to rig bids and allocate the supply of those Fuel Injection Systems.  Defendants then submitted as part of the RFQ process bids and price quotations to the OEMs in accordance with those conspiratorial agreements.

61.     Defendants knew and intended that their conduct would impact not only Fuel Injection Systems sold to the OEMs as a result of the rigged bidding processes, but also the Fuel Injection Systems sold to all direct purchasers throughout the United States.

62.     This was because the conspiracy permitted the Defendants to fix, raise, maintain, and/or stabilize the prices paid by OEMs in order to set a floor for the prices paid by all other direct purchasers of Fuel Injection Systems.

16

63.     As a result of the conspiracy, OEMs and all or nearly all other direct purchasers of Fuel Injection Systems paid supra-competitive prices for those products.

**E. Government Investigations and Guilty Pleas**

64.     Government officials in the United States, Europe, Canada, and Japan have been involved in a globally coordinated antitrust investigation for several years involving automotive parts, including Fuel Injection Systems.  The investigation began in Europe after some European OEMs lodged a complaint with the European Commission ("EC").

65.     As a result of this investigation, United States, European, and Japanese authorities executed surprise raids in February 2010 at the offices of several automotive parts manufacturers, including some of the Defendants.  To obtain search warrants for the raids conducted in the United States, the government was legally required to demonstrate probable cause that it would obtain evidence of an antitrust violation as result of executing the warrant— *i.e.*, the United States must have presented sufficient evidence to the magistrate to convince him or her that a person of reasonable caution would believe that raiding these offices would uncover additional evidence of antitrust violations.

66.     As of the filing of this Complaint, thirty-five (35) companies and twenty-nine (29) executives have pled guilty or agreed to plead guilty as a result of the DOJ's automotive parts investigation, resulting in more than <u>$2.5 billion in criminal fines and dozens of prison sentences</u>.

67.     According to the FBI's Special Agent in Charge Andrew G. Arena, "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade.  The conduct had also affected

17

commerce on a global scale in almost every market where automobiles are manufactured and/or sold."

**Hitachi, Mitsuba, Mitsubishi, and Aisan Have Pled Guilty to Price-Fixing Fuel Injection Systems and Related Parts**

68.    Defendants Hitachi, Mitsuba, Mitsubishi, and Aisan have all pled guilty to participating in a combination or conspiracy to fix, stabilize, and maintain the prices of Fuel Injection Systems and/or certain Fuel Injection System-related parts in violation of the Sherman Act.

69.    The plea agreements also covered these Defendants' subsidiaries.  For example, the Aisan agreement included a promise by the DOJ not to prosecute "any of [Aisan's] subsidiaries for any act or offense committed before the date of the signing of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive parts[.]"  The agreement similarly provided that the "United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of signature of this Plea Agreement[.]"   In addition, the parent company's plea agreement required cooperation from its subsidiaries and their officers, directors and employees.  Nearly identical provisions are also included in the plea agreements for Defendants Hitachi, Mitsuba, and Mitsubishi.

70.    According to the separate Informations filed against these Defendants, Hitachi Automotive Systems, Ltd., Mitsuba Corporation, Mitsubishi Electric Corporation, Aisan Industry Co., Ltd., and their co-conspirators carried out their conspiracy by, among other things:

> (a)    participating in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price

quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(b)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(c)     agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive parts sold to automobile manufacturers in the United States and elsewhere;

(d)     agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

(e)     submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)     selling automotive parts to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)     accepting payment for automotive parts sold to automobile manufacturers in the United State and elsewhere at collusive and noncompetitive prices;

(h)     engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)     employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

71.     The Information filed against each Defendant also provided additional details regarding their participation in the conspiracy:

72.     **Hitachi**:  On September 26, 2013, the DOJ announced that Defendant Hitachi Automotive Systems, Ltd. agreed to plead guilty to participating in a conspiracy regarding certain Fuel Injection System-related parts from at least as early as January 2000 until at least February 2010.  The parts subject to the conspiracy included, among other products, air flow

19

meters, fuel injection systems, and electronic throttle bodies.  As part of its guilty plea, Hitachi Automotive Systems, Ltd. agreed to pay a $195 million fine.

73.    Additionally, on September 18, 2014, the DOJ announced a one-count indictment against four executives at Hitachi Automotive Systems, Ltd.—Takashi Toyokuni, Ken Funasaki, Kazunobu Tsunekawa, and Tomiya Itakura—charging them with conspiring to fix prices of various automotive parts, including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, inverters, and motor generators between at least January 2000 and February 2010.

74.    **Mitsuba**:  On September 26, 2013, the DOJ announced that Defendant Mitsuba Corporation agreed to plead guilty to participating in a conspiracy regarding certain Fuel Injection System-related parts from at least as early as January 2000 until at least February 2010. The parts subject to the conspiracy included, among other products, electronic throttle motors and fuel pumps.  As part of its guilty plea, Mitsuba Corporation agreed to pay a $135 million fine.

75.    According to the Information filed, Defendant Mitsuba Corporation obstructed justice because of the following actions:

> In or about February 2010, Executive A, acting on Defendant's behalf, knowingly altered, destroyed, mutilated, concealed, covered up, falsified and made false entries in records, documents and tangible objects with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, to wit, an investigation by the FBI and the United States Department of Justice of possible violations of U.S. antitrust law, in relation to and contemplation of such matter and case, and furthermore did order and command other employees of the Defendant to do so, in violation of 18 U.S.C. § 1519.
>
> After becoming aware of the FBI search of Defendant's co- conspirator's U.S. offices, Executive A informed certain of his subordinates employed

20

at the U.S. subsidiary of Defendant about the FBI search, and instructed such subordinates, as well as other employees of Defendant, to locate, conceal and destroy documents and electronic files that were likely to contain evidence of antitrust crimes in the United States and elsewhere.

Executive A concealed and destroyed documents and electronic files in his possession, custody and control in the Eastern District of Michigan that were likely to contain evidence of antitrust crimes in the United States and elsewhere. Certain of Executive A's subordinates and other employees of Defendant took acts in the Eastern District of Michigan and elsewhere to endeavor to conceal and destroy such documents and electronic files in the possession, custody and control of Defendant, and did conceal and destroy such documents and electronic files.

76.     In a separate indictment announced by the DOJ on February 5, 2015, two former Mitsuba Corporation executives—Hiroyuki Komiya and Hirofumi Nakayama—were charged with fixing the prices of various automotive parts and with knowingly and corruptly persuading, and attempting to persuade, employees of Mitsuba to destroy documents and delete electronic data that may contain evidence of antitrust crimes in the United States and elsewhere.

77.     **Mitsubishi**:   On September 26, 2013, the DOJ announced that Defendant Mitsubishi Electric Corporation agreed to plead guilty to participating in a conspiracy regarding certain automotive parts from at least as early as January 2000 until at least February 2010.[1]   As part of its guilty plea, Mitsubishi Electric Corporation agreed to pay a $190 million fine.

---

[1]  According to paragraph 13 of Mitsubishi Electric Corporation's Plea Agreement, the term "[a]utomotive parts" was defined as AC generators, air bag sensors, air bags, air flow sensors, alternators, cam and crank sensors, electric power steering motors, electronic control units, exhaust gas recirculation valves, fuel injectors, fuel pumps, high intensity discharge ballasts, ignition coils, integrated units, keyless entry systems, manifold absolute pressure sensors, purge control valves, starter motors, throttle bodies, variable cam timing, and variable valve timing. The Information filed on September 26, 2013, however, states that Mitsubishi Electric Corporation and its co-conspirators agreed "to rig bids for, and to fix, stabilize, and maintain the prices of, certain automotive parts, including starter motors, alternators, and ignition coils."  It is unclear whether or not this list was meant to be exhaustive  or representative (*i.e.*. if the various other parts identified in the Plea Agreement were also subject to the same big ridding, marketing allocation, and price-fixing activities).

78.     On September 18, 2014, the DOJ announced a three-count indictment against three executives at Mitsubishi Electric Corp.—Atsushi Ueda, Minoru Kurisaki, and Hideyuki Saito.  Count one charged all three executives with conspiring to fix prices of various automotive parts, including starter motors, alternators, and ignition coils between at least January 2000 and February 2010.  Count two charged Kurisaki and Saito with knowingly conspiring to obstruct justice by destroying documents and corruptly persuading, and attempting to persuade others, to destroy documents.  Count three charged Saito with knowingly and corruptly persuading, and attempting to persuade, executives to destroy documents and delete electronic data that may contain evidence of antitrust crimes in the United States and elsewhere.

79.     **Aisan**:  On February 3, 2014, Defendant Aisan Industry Co., Ltd. pled guilty to participating in a combination or conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of electronic throttle bodies (which are used in fuel injection systems) in violation of the Sherman Act from at least as early as October 2003 until at least February 2010.  As part of its guilty plea, Aisan Industry Co., Ltd. paid a $6.86 million fine.

**Bosch and DENSO Have Pled Guilty to Price-Fixing Other Automotive Parts**

80.     Bosch and DENSO have pled guilty to participating in combinations or conspiracies to fix, stabilize, and maintain the prices of other automotive parts in violation of the Sherman Act.

81.     On March 31, 2015, the DOJ announced that Defendant Robert Bosch GmbH had agreed to pay a $57.8 million fine and plead guilty to a one-count Information charging it with conspiring to allocate the supply of, rig bids for, and to fix, stabilize, and maintain the prices of,

(a) spark plugs and oxygen sensors sold from at least as early as January 2000 until at least July 2011, and (b) starter motors sold from at least January 2009 until at least June 2010.

82.     According to Deputy Assistant Attorney General Brent Snyder of the Antitrust Division's Criminal Enforcement Program, "The participants in this conspiracy were not located in just one country or region of the world."   Snyder further stated, "Collusion related to automotive parts was global in nature and our efforts to hold responsible companies and individuals accountable for the resulting harm to U.S. consumers and businesses."

83.     On January 30, 2012, the DOJ announced that Defendant DENSO Corporation had agreed to pay a $78 million fine and plead guilty to a two-count criminal Information charging it with: (1) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, electronic control units ("ECUs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and until at least February 2010 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (2) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1 .

84.     Defendant DENSO Corporation's subsidiary, Defendant DENSO International Korea Corporation, was a member of the DENSO family that performed manufacturing and/or marketing and sales operations with respect to sales of products to Korean automobile manufacturers.  For DENSO to effectuate the conspiracy to fix prices and rig bids on, among

other products, Fuel Injection Systems, Defendant DENSO International Korea Corporation was a designated entity for rigging bids in response to RFQs issued by Korean automobile manufacturers.

85.    According to the separate criminal Informations filed against them, Defendants Robert Bosch GmbH, DENSO Corporation, and their co-conspirators carried out their conspiracies by:

(a)    participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to certain automobile and internal combustion engine manufacturers in the United States and elsewhere;

(b)    agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile and internal combustion engine manufacturers;

(c)    agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive parts sold to automobile and internal combustion engine manufacturers in the United States and elsewhere, in some cases on a model-by-model or an engine-specific basis;

(d)    agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain automobile and internal combustion engine manufacturers in the United States and elsewhere;

(e)    submitting bids, price quotations, and price adjustments to certain automobile and internal combustion engine manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)    selling automotive parts to certain automobile and internal combustion engine manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)    accepting payment for automotive parts sold to certain automobile and internal combustion engine manufacturers in the United States and elsewhere at collusive and non-competitive prices;

24

(h)    engaging in meetings, conversations, and communications for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)    employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

## ANTITRUST INJURY

86.    Defendants' conspiracy suppressed price competition among Defendants, causing prices for Fuel Injection Systems to be artificially inflated throughout the Class Period.

87.    As a result, Plaintiff and the members of the Class paid supra-competitive prices for Fuel Injection Systems and were deprived of the benefits of a competitive market throughout the Class Period.

88.    Therefore, as a direct and foreseeable result of Defendants' conspiracy, Plaintiff and the members of the Class have been injured in their business or property in that they paid more for Fuel Injection Systems than they would have in the absence of Defendants' unlawful and anticompetitive conduct.

## CLASS ACTION ALLEGATIONS

89.    Plaintiff brings this action both on behalf of themselves and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3). The Class is defined as follows:

> All individuals and entities that purchased Fuel Injection Systems in the United States directly from one or more Defendants or their co-conspirators (or their controlled subsidiaries, affiliates, or joint venturers) from January 1, 2000 through the present.

90.    Plaintiff does not know the exact number of Class members, such information being in the exclusive control of Defendants.  Due to the nature of the trade and commerce

involved, however, Plaintiff believes that the members of the Class are so numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

91.     There are questions of law or fact common to the Class, including, but not limited to, the following:

(a)     Whether Defendants engaged in a contract, combination, or conspiracy to fix, raise, maintain, or stabilize prices of Fuel Injection Systems sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

(e)     Whether the contract, combination, or conspiracy caused Fuel Injection Systems prices to be higher than they would have been in the absence of Defendants' conduct;

(f)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the other Class members;

(g)     Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiff and other Class members;

(h)     Whether Plaintiff and other Class members are entitled to injunctive relief and, if so, the nature and extent of such relief; and

(i)     The appropriate class-wide measure of damages.

92.     These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

93.     Plaintiff's claims are typical of the claims of the Class because Plaintiff directly purchased Fuel Injection Systems from one or more of the Defendants and/or their co-conspirators, all Class members were damaged by the same conspiracy alleged herein, and the relief sought by Plaintiff is common to the Class.

94.     Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is a direct purchaser of Fuel Injection Systems and has no conflict with any other members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

95.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

96.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution of this matter as a class action will eliminate the possibility of repetitive litigation and there are no inherent barriers to managing the case as a class action.

97.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying outcomes.

98.     The Class is also readily definable and is one for which records likely exist in the files of Defendants.

## PLAINTIFF'S CLAIMS ARE TIMELY

99.     Plaintiff and the members of the Class had no knowledge of the anticompetitive conduct alleged herein, or of facts sufficient to place them on notice of the claims set forth

herein, until, at the earliest, September 26, 2013. On that date, the DOJ publicly announced Defendant Hitachi Automotive Systems, Ltd.'s impending guilty plea.

100. As a result, Plaintiff and the members of the Class did not discover, nor could they have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein, until September 26, 2013. Prior to that time, there was insufficient information to suggest that any of the Defendants was involved in a conspiracy to fix prices, rig bids, or allocate the market for Fuel Injection Systems.

101. Moreover, fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the members of the Class until at least September 26, 2013. Defendants affirmatively and wrongfully concealed their anticompetitive conduct since the Class Period began.

102. Defendants' conspiracy, by its very nature, was inherently self-concealing. Moreover, because Fuel Injection Systems are not exempt from antitrust regulation, and because the price for Fuel Injection Systems was set through an RFQ process that Plaintiff and members of the class had reason to believe was competitive, Plaintiff and the members of the Class reasonably believed they were making Fuel Injection Systems purchases in a competitive industry.

103. In addition, Defendants took affirmative steps to conceal their conspiracy and carry it out in a manner that would preclude detection. For example, Defendants have used code names and met in remote locations in order to keep their anticompetitive conduct secret.

104. One or more of the Defendants have already pled guilty to purposefully destroying evidence to avoid detection. For example, the Plea Agreement for Defendant Hitachi Automotive Systems, Ltd. states:

In February 2010, certain employees of the defendant became aware of a criminal antitrust investigation when one of their co-conspirators in the criminal activity described in paragraphs 4(a) – (d) of this Plea Agreement was searched by Federal law enforcement authorities in the United States. Over the next several days, certain employees of the defendant took steps to destroy evidence of the defendant's criminal activity described in paragraphs 4(a) – (d). In July 2011, certain employees of the defendant learned that the defendant was being raided by law enforcement authorities outside the United States in connection with an investigation into violations of competition laws. Immediately after learning of the search, certain employees of the defendant took steps to destroy evidence of the criminal activity described in paragraphs 4(a) – (d) to prevent its discovery by law enforcement authorities. On both occasions, the evidence that was destroyed included electronic files and paper documents. Certain employees involved in the efforts to destroy evidence were senior managers of the defendant.

Similar admissions were made in the Plea Agreements for Defendant Mitsuba Corporation and Defendant Mitsubishi Electric Corporation.

105.   As described above, several employees of the Defendants have pled guilty to charges of obstruction of justice in which they admitted to deleting, destroying, altering, falsifying and/or concealing records and documents, including emails and electronic files.

106.   Because Defendants' anticompetitive conduct was both self-concealing and affirmatively concealed, Plaintiff and the members of the Class did not learn or discover the operative facts giving rise to this Complaint prior to September 26, 2013. No information, actual or constructive, was ever made available to Plaintiff and the members of the Class that would have led a reasonably diligent person to investigate whether a conspiracy existed prior to September 26, 2013.

107.   For these reasons, the statute of limitations applicable to Plaintiff and the Class's claims did not begin to run or were otherwise tolled until September 26, 2013.

**CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**(Against All Defendants)**

108.    Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

109.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, combination, or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Fuel Injection Systems sold in or into the United States.

110.    As horizontal competitors, Defendants' agreement, combination, or conspiracy thus constitutes a *per se* violation of the federal antitrust laws.

111.    In accordance with this agreement, combination, or conspiracy, Defendants and their co-conspirators endeavored to and succeeded in rigging bids, allocating the market, and fixing prices for Fuel Injection Systems sold in or into the United States during the Class Period.

112.    In furtherance of their conspiracy, Defendants and their co-conspirators took at least the following affirmative actions:

(a) Participated in meetings, conversations, and communications to discuss the bids and price quotations for Fuel Injection Systems to be submitted to direct purchasers in the United States;

(b) Agreed on bids and price quotations to be submitted to direct purchasers in the United States;

(c) Submitted bids and price quotations to direct purchasers of Fuel Injection Systems in accordance with the agreements reached;

(d) Manipulated prices and allocated supply of Fuel Injection Systems sold in or into the United States;

30

(e) Coordinated price adjustments for Fuel Injection Systems sold in or into the United States;

(f) Sold Fuel Injection Systems in or into the United States at supra-competitive prices; and

(g) Actively concealed the true nature of their unlawful conduct from Plaintiff and the members of the Class in furtherance of the conspiracy.

113.    As a direct and proximate result of the conduct described above, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for Fuel Injection Systems during the Class Period than they would have absent the anticompetitive conduct of Defendants and their co-conspirators.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class proposed herein, and respectfully requests the following relief:

A.    That the Court determine that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, with Plaintiff as the designated Class representative and its counsel as Class Counsel;

B.    That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this complaint, be adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. §1;

C.    That Plaintiff and members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15(a);

D.      That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E.      That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law;

F.      That Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest in accordance with law; and

G.      That Plaintiff and members of the Class receive such other or further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated:  May 20, 2015                          Respectfully submitted,


 /s/ Aubrey H. Tobin
Aubrey H. Tobin (P31256)
Attorney at Law, P.C.
2140 Walnut Lake Road
West Bloomfield, MI 48323
Telephone: (248) 932-3070
Aubrey@tobinpc.com

M. John Dominguez
COHEN MILSTEIN SELLERS
& TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1431
jdominguez@cohenmilstein.com

David A. Young
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave. NW, Suite 500 West
Washington, D.C. 20005
Telephone: (202) 408-4600
dyoung@cohenmilstein.com

Matthew W. Ruan
COHEN MILSTEIN SELLERS
& TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
mruan@cohenmilstein.com

Christopher J. Cormier
COHEN MILSTEIN SELLERS
& TOLL PLLC
2443 S. University Boulevard, #232
Denver, CO 80210
Telephone: (720) 583-0650
ccormier@cohenmilstein.com

Solomon B. Cera
Thomas C. Bright
Pamela A. Markert
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA 94105-2835
Telephone: (415) 777-2230
scera@cerallp.com
tbright@cerallp.com
pmarkert@cerallp.com